MRS. MARY LOUISE T. BASS, EMPLOYEE v.
MECKLENBURG COUNTY, SELF INSURER, EMPLOYER.

(Filed 12 December 1962.)

**1. Master and Servant § 96—**

The evidence in this case *is held* to support the findings of the Industrial Commission in regard to the time, place, and circumstances under which claimant suffered an injury by accident, and to support the finding that claimant was furnished board and room on the premises as an incident of her employment in order that she might be available in emergencies at times other than her regular working hours.

**2. Master and Servant § 53—**

Whether an accident arises out of and in the course of the employment within the meaning of the Workmen's Compensation Act is a mixed question of law and fact; the words "out of" refer to the origin and cause of the accident, and the words "in the course of" refer to the time, place and circumstances under which the accident occurs.

**3. Master and Servant § 60—**

While injuries to an employee while going to and from his work ordinarily do not arise out of and in the course of the employment, where the employer provides board and room upon the premises as an incident

BASS *v.* MECKLENBURG. COUNTY.

of the employment, an injury by accident which occurs while the employee is on the premises and going directly from his room to his work may arise out of and in the course of the employment when such injury can fairly be traced to the employment as a contributing proximate cause.

4. **Same—— Evidence held to support conclusion that injury on premises while going to work arose out of and in course of employment.**

The evidence tended to show that claimant was employed as a practical nurse at defendant's County Home, that she was furnished room and maintenance on the premises incident to the employment, that her hours of duty were from 7:00 a.m. to 7:00 p.m. but that she customarily reported for duty a few minutes prior to the designated time in order to get the report of the night nurse, and that on the occasion in question she left her room some twenty minutes before 7:00 a.m. and while on a direct route from her room to the building where she worked, going by the building in which the dining room was located for coffee and to leave some newspapers for a fellow employee, she attempted to go around a bush, wet with rain, which was overhanging the concrete walk, and fell to her injury. *Held:* The evidence supports the conclusion that the injury arose out of and in the course of her employment.

5. **Master and Servant § 91——**

The failure of the Industrial Commission to find specific facts requested by defendant will not be held for prejudicial error when such findings, if made, would not alter the rights of the parties.

6. **Master and Servant § 73——**

An exception on the ground that the Industrial Commission failed to impose the limitations prescribed by G.S. 97-25 and G.S. 97-26 in ordering defendant to pay all medical and doctors bills which should be submitted to and approved by the Commission presents a moot question; such challenge will lie only after bills or parts of bills beyond the limitations prescribed by the statute have been submitted to and approved by the Commission.

7. **Master and Servant § 96——**

Where the ruling of the Industrial Commission awarding compensation is affirmed, the Commission's approval of additional fees for claimant's counsel, in affirming the Hearing Commissioner's findings of fact, conclusions, and award, will not be disturbed. G.S. 97-88.

8. **Appeal and Error § 38——**

Exceptions not set out in defendant's brief will be taken as abandoned. Rule of Practice in the Supreme Court No. 28.

9. **Master and Servant § 94——**

The review of the judgment of the Superior Court affirming the award of the Industrial Commission is limited to matters of law.

APPEAL by defendant from *Riddle, S.J.,* 7 May 1962 Special "B" Civil Term of MECKLENBURG.

A proceeding for workmen's compensation.

In addition to the jurisdictional determination, based upon a stipulation of the parties, the operative findings of fact and conclusions of law of the Hearing Commissioner are to this effect.

On 18 July 1959 Mrs. Mary Louise T. Bass, a female about 60 years of age, was employed by defendant as a resident practical nurse at the Mecklenburg County Home, and had been so employed continuously since 4 February 1959. This was her second period of similar employment by defendant—the first period being from 28 January 1958 until 15 June 1958. During both periods of employment she lived on the premises of the Mecklenburg County Home; during the first period she lived in the main building, and during the second period she lived in the new nurses' home. By the terms of her employment when at work she was on duty from 7:00 a.m. to 7:00 p.m. As a day nurse it was her custom to report a few minutes before 7:00 a.m., so she could get the reports of the night nurse. She was off duty on an average of one day a week.

During her second period of employment her contract provided she was to be paid $195.00 in cash per month and was to be furnished free her room, her meals, and her laundry.

She spent the night of 17 July 1959 in her room in the new nurses' home. She was on duty on 18 July 1959, and about 20 minutes before 7:00 a.m. she left her room to report for work in the main building. In going from the new nurses' home to the main building she went by the old nurses' home. The kitchen and dining room where she ate were in the old nurses' home. A newly constructed concrete walk connected the new and old nurses' home, which she was walking on on her way to the main building. It had been raining, and there was water on the trees and bushes. As she approached the old nurses' home, there was a large bush or shrub overhanging the concrete walk. She attempted to go around the bush, and in doing so her feet slipped out from under her, and she fell, breaking her right hip.

The Hearing Commissioner reached the conclusion that claimant sustained an injury arising out of and in the course of her employment with defendant, awarded her compensation, required defendant to pay all medical, doctors', hospital and treatment bills and expenses incurred by plaintiff by reason of her injury "when bills for the same shall have been submitted to and approved by the Industrial Commission," and allowed counsel fees for claimant's lawyers to be deducted from the compensation ordered paid claimant and paid direct to her attorneys. On appeal the Full Commission affirmed the award of the Hearing Commissioner.

From a judgment of the Superior Court overruling all of defendant's exceptions to the order of the Full Commission, and affirming the order of the Full Commission, defendant appeals.

*Robert L. Scott for defendant appellant.*
*Helms, Mulliss, McMillan & Johnston by James B. McMillan for plaintiff appellee.*

PARKER, J.   Defendant assigns as error that the crucial and operative findings of fact are not supported by competent evidence, and further assigns as error the conclusion that claimant's injury by accident arose out of and in the course of her employment with defendant.

Claimant's evidence is to this effect: She was first hired by Mrs. Lillian Crowe Miller, Superintendent of Nurses at the Mecklenburg County Home, to work at the County Home on 9 January 1958 as a licensed practical nurse, and worked there until 15 June 1958. Her second period of employment there was from 4 February 1959 until her injury on 18 July 1959. Mrs. Miller told her she "would have to live at the County Home* * *that the people who worked there lived there," and she further said "she wanted us all there, so that if anything happened she could get us." During her periods of employment there all the nurses who worked at the County Home lived there, and also all the employees. According to her contract she was to start work at $195.00 a month with full maintenance. She was provided a room to live in on the premises, three meals a day, laundry, and everything. When she returned to work the second time, Mrs. Miller told her she would have a front room in the new nurses' home. During her second period of employment, she lived in the new nurses' home, got her meals in the old nurses' home, and worked in the main building. While she worked at the County Home, she shared a house with an old lady in Charlotte. She carried to her room in the new nurses' home what personal things she needed, and left the rest in Charlotte. She took a day off from work each week. On one occasion when there was a death and she was off duty, she was called back and worked.

The requirements of her job were that she had to have her breakfast and be at the main building in time to get the report of the night nurse and have everything in order at 7:00 a.m. She was on duty on 18 July 1959, and left her room in the new nurses' home about 6:40 a.m. to go to work. She had had no breakfast when she left her room. From the new nurses' home to the old nurses' home is 20 to 30 feet, and from the place where she fell it is about 150 to 200 feet to the main building. There is a little cement walk about two to two and one-half feet wide from the new nurses' home to the old nurses' home. It had been raining and the shrubbery was wet. When she left her home to go to work, she had her raincoat on, had an umbrella, and had in her hand some copies of The Charlotte Observer. She intended to stop at the old nurses' home to have a cup of coffee and to give the papers

to the cook. That was all the breakfast she had planned to eat that morning. She testified on direct examination: "I was going to give the papers to her and get a cup of coffee. This was about five minutes before I was supposed to be over at the main building checking in for work." There was a big shrub at the corner of the old nurses' home whose branches extended partially over the concrete walk. When she came to this shrubbery, she stepped around it, because she didn't want to get her clean uniform spotted to go on duty, and in doing so she fell and broke her right hip. She testified on direct examination: "I fell right at this bush which was on my right. That is the regular and most direct route from where I lived on the premises to where I worked on the premises. I was on that route. I had my meals in the old nurses' home in front of which I fell. I had not had my breakfast that morning."

Walker H. Busbee, County Auditor for Mecklenburg County and director of job classifications, a witness for the defendant, testified in part: "The established policy announced by the Board of County Commissioners was that no job in the County required a person to live in residence at the site of the job." On cross-examination he testified: "All of the regularly employed full-time nurses lived on the premises in 1958 and lived on the premises in 1959 and live on the premises in 1961. This is based upon information given me by Mrs. Miller."

Lillian Crowe Miller, who was her husband's assistant at the Mecklenburg County Home according to her testimony, and a witness for defendant, testified on direct examination: "I told her [claimant] that we had room and board there if she wanted it. Mrs. Bass said she did not drive a car and it would suit her to stay out there. * * *She was never told by me that she had to live on the premises. I told her that her salary would be $195.00 plus maintenance." Mrs. Miller testified on cross-examination: "All the regular nurses who have worked out there during the last three years have lived on the premises. They did it because they wanted to. They did live on the premises. *The woman who did not want to live on the premises was not given a job.*" (Emphasis supplied.)

There is ample competent evidence in the record to support the crucial and operative findings of fact. Defendant's assignments of error challenging such findings on the ground they are not supported by competent evidence are overruled.

Are these findings of fact sufficient to support the conclusion claimant's injury by accident arose out of and in the course of her employment by defendant? The answer is, Yes.

The findings of fact and the evidence are plain and clear that claimant's injury was caused by accident, construing the word "acci-

dent" as used in the North Carolina Workmen's Compensation Act. *Smith v. Creamery Co.*, 217 N.C. 468, 8 S.E. 2d 231.

It is settled law in this State that the words "out of" refer to the origin or cause of the accident, and that the words "in the course of" refer to the time, place and circumstances under which it occurred. *Hardy v. Small*, 246 N.C. 581, 99 S.E. 2d 862; *Alford v. Chevrolet Co.*, 246 N.C. 214, 97 S.E. 2d 869; *Plemmons v. White's Service, Inc.*, 213 N.C. 148, 195 S.E. 370.

Whether an accident arose out of the employment is a mixed question of law and fact. *Horn v. Furniture Co.*, 245 N.C. 173, 95 S.E. 2d 521, and cases cited.

This court said in *Horn v. Furniture Co., supra*:

> "It is settled law that, 'where an injury cannot fairly be traced to the employment as a contributing proximate cause. . .it does not arise out of the employment.' *Bryan v. T. A. Loving Co.*, 222 N.C. 724, 24 S.E. 2d 751; *Lewter v. Enterprises, Inc., supra* (240 N.C. 399, 82 S.E. 2d 410) ; *Lockey v. Cohen, Goldman & Co.*, 213 N.C. 356, 196 S.E. 342; *Walker v. Wilkins, Inc.*, 212 N.C. 627, 194 S.E. 89. Therefore, if claimant's injury cannot fairly be traced to his employment as a contributing proximate cause, it is not compensable under our Workmen's Compensation Act. *Lewter v. Enterprises, Inc., supra; Berry v. Furniture Co.*, 232 N.C. 303, 60 S.E. 2d 97; *Gilmore v. Board of Education*, 222 N.C. 358, 23 S.E. 2d 292. 'There must be some causal relation between the employment and the injury.' *Conrad v. Foundry Co.*, 198 N.C. 723, 153 S.E. 266."

The operative findings of fact, fully supported by competent evidence, are: Claimant was employed by defendant as a practical nurse at the County Home. She lived in the new nurses' home on the premises. As part of her salary defendant furnished her a room in the new nurses' home and meals in the old nurses' home on the premises. The work for which she was employed was done at the main building of the County Home. When on duty her working hours at the main building on the premises were from 7:00 a.m. to 7:00 p.m. As a day nurse it was her custom to report at the main building for work a few minutes before 7:00 a.m. to get the reports of the night nurse. She was on duty 18 July 1959, and while she was walking from her room at the new nurses' home to report for work at the main building—all on defendant's premises of the County Home where she lived and worked—she fell on the concrete sidewalk, and broke her right hip.

As an exception to the general rule, known as the "going and coming rule," (99 C.J.S., Workmen's Compensation, sec. 232, p. 807), that injuries sustained by an employee while going to or from work are

not ordinarily compensable (for illustrations of the general rule see *Ellis v. Service Co., Inc.*, 240 N.C. 453, 82 S.E. 2d 419; *Bryan v. T. A. Loving Co.*, 222 N.C. 724, 24 S.E. 2d 751; *Bray v. Weatherly & Co.*, 203 N.C. 160, 165 S.E. 332), the great weight of authority holds that injuries sustained by an employee while going to or from his place of work upon premises owned or controlled by his employer are generally deemed to have arisen out of and in the course of the employment within the Workmen's Compensation Acts and are compensable, provided the employee's act involves no unreasonable delay. *Kasari v. Industrial Commission of Ohio*, 125 Ohio St. 410, 181 N.E. 809, 82 A.L.R. 1040; *Evans v. Workmen's Compensation Commissioner*, 124 W. Va. 336, 20 S.E. 2d 172; *Murphy v. Wells-Lamont-Smith Corp.*, Mo. App., 155 S.W. 2d 284; *Reed v. Brown*, 129 Ind. App. 75, 152 N.E. 2d 257; *Babkees v. Electrolux Corp.*, 163 N.Y.S. 2d 809, motion for reargument and appeal denied 169 N.Y.S. 2d 892; *Petroleum Casualty Co. v. Green*, Tex. Civ. App., 11 S.W. 2d 388; *Roberts' Case*, 124 Me. 129, 126 A. 573; *Simonson v. Knight*, 174 Minn. 491, 219 N.W. 869; Annos. 49 A.L.R. 426, and 82 A.L.R. 1044, where many cases are cited; 99 C.J.S., Workmen's Compensation, sec. 234, where numerous cases are cited; 58 Am. Jur., Workmen's Compensation, sec. 221. See *Davis v. Manufacturing Co.*, 249 N.C. 543, 107 S.E. 2d 102. Some courts have engrafted a qualification to the exception to the general rule where an accident occurs at a place far removed from the actual place of employment, even though on the employer's premises. Anno. 49 A.L.R. 443.

*Bountiful Brick Co. v. Giles*, 276 U.S. 154, 72 L. Ed. 507, was a case heard on a writ of error to the Supreme Court of the State of Utah to review a judgment affirming an award by the Industrial Commission of compensation for the death of an employee under the Workmen's Compensation Act. The Supreme Court of the United States affirmed the judgment of the Supreme Court of the State of Utah. In its opinion it said:

> "Whether Giles was negligent in entering through the fence where he did, or in crossing the tracks, or in not selecting the safest way, are matters not relevant to the inquiry. Liability was constitutionally imposed under the Utah compensation law if there was a causal connection between the injury and the employment in which Giles was then engaged substantially contributing to the injury. [Citing authority.] And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while

passing, with the express or implied consent of the employer, to
or from his work by a way over the employer's premises, or over
those of another in such proximity and relation as to be in practi-
cal effect a part of the employer's premises, the injury is one
arising out of and in the course of the employment as much as
though it had happened while the employee was engaged in
his work at the place of its performance. In other words, the em-
ployment may begin in point of time before the work is entered
upon and in point of space before the place where the work is to
be done is reached. Probably, as a general rule, employment may
be said to begin when the employee reaches the entrance to the
employer's premises where the work is to be done; but it is clear
that in some cases the rule extends to include adjacent premises
used by the employee as a means of ingress and egress with the
express or implied consent of the employer. [Citing authority.]"

The new nurses' home on the County Home's grounds was provided
by defendant as a place for claimant and nurses employed there to live.
It is apparent that one, if not the main, purpose of defendant's main-
taining a nurses' home on the premises was to secure the proximity of
the nurses to the main building in which those under their care lived,
so that they would be close by when on duty, and might quickly re-
spond to a call, if needed, at other than regular hours of work. It is
manifest that claimant's leaving her home some twenty minutes before
she was to go on duty at 7:00 a.m. was required in the efficient per-
formance of her duties of employment to get the reports of the night
nurse, so that she could adequately care for those people defendant
employed her to nurse. It is evident that while claimant was going from
where she lived at the new nurses' home to the main building to work,
all on defendant's premises, some twenty minutes before she was to go
on duty at 7:00 a.m., she was in the ambit of her employment, and that
her injury grew out of and was incidental to her employment. Based on
the findings of fact, claimant's injury can fairly be traced to her em-
ployment as a contributing proximate cause, and consequently, the
findings of fact support the conclusion that claimant's injury by acci-
dent arose out of and in the course of her employment.

Defendant's assignment of error #16 is:

"The Full Commission erred in failing to rule that the Hearing
Commissioner failed to find the facts material to the defenses
alleged by the defendant and erred in failing to make such findings
of fact, particularly:

"(a) The facts relating to the distance between the point where plaintiff allegedly fell and the point where she would have assumed her duties.

"(b) The facts relating to the freedom of plaintiff to leave the premises and to remain off the premises after 7:00 p.m. without signing any register or leaving any word where she could be reached and her freedom to remain absent until the prescribed starting time of 7:00 a.m.

"(c) The facts relating to the existence of two intervening personal errands to be performed by plaintiff before assuming her duties, namely, delivering personal newspapers as a favor to the cook in the old nurses' home and eating her breakfast.

"(d) The facts relating to the time which would have been required for plaintiff to proceed from the point where she allegedly fell to the point where she would have performed any of the duties of her employment exclusive of the intervening personal errands.

"(e) The facts relating to the hazard of an unexplained fall on a wet sidewalk as being common to the general public in Mecklenburg County on the date of the alleged injury.

"(f) The facts relating to her living upon the premises of the Mecklenburg County Home as a convenience to herself and not as a condition of employment.

"(g) The facts relating to her stipulation that she does not claim any liability on the part of defendant for her treatment at the Veterans Administration Hospital.

"(h) The facts relating to her pre-existing disabilities and pension from the Veterans Administration."

Considering all the evidence in the record and the applicable principles of law stated above, it seems clear that if the Commission had made specific findings of fact which would have competent evidence in the record to support them, as requested by defendant in this assignment of error, it would constitute no valid defense to Mrs. Bass' claim for compensation, and, therefore, this assignment of error is overruled.

Defendant assigns as error that the Industrial Commission committed error in failing to impose the limitations contained in G.S. 97-25 and G.S. 97-26 upon the medical, etc., expenses ordered paid by the defendant.

The order of the Industrial Commission, approved by the judge, is that defendant shall pay all medical, etc., bills incurred by claimant

by reason of her injury "when bills for the same shall have been submitted to and approved by the Industrial Commission." Defendant states in its brief it "has no way of predicting what bills will be submitted to the Industrial Commission by plaintiff in the future, nor what amounts will be approved by the Industrial Commission." Until the bills have been submitted to and approved by the Commission, it would seem that this assignment of error presents for decision a moot question. It is our opinion, and we so hold, that when the Commission approves claimant's such bills, defendant shall then have a right on appeal to challenge the action of the Commission in respect to the bills approved by it, in whole or in part, if it deems it advisable to do so.

The Full Commission in affirming the Hearing Commissioner's findings of fact, conclusions, and award, approved a fee of $150.00 for claimant's counsel, in addition to the fee for claimant's counsel approved by the Hearing Commissioner, and ordered that such fee be assessed against defendant as a part of the costs of the appeal in accordance with the provisions of G.S. 97-88. The judge affirmed the Full Commission. Defendant assigns as error the taxing of this fee in the costs against defendant. As we find no error in the Commission's decision, G.S. 97-88 applies. This assignment of error is overruled. *Liles v. Electric Co.*, 244 N.C. 653, 94 S.E. 2d 790.

We have discussed all assignments of error brought forward and discussed in defendant's brief. There are a number of exceptions in the record which are not set out in defendant's brief, which will be taken as abandoned by defendant. Rules of Practice in the Supreme Court, 254 N.C. 783, 810; *Power Company v. Currie, Com'r of Revenue*, 254 N.C. 17, 118 S.E. 2d 155.

The review here is limited to assignments of error relating to matters of law at the trial in the superior court. *Horn v. Furniture Co., supra.* All of defendant's assignments of error are overruled. The findings of fact are supported by competent evidence, the findings support conclusions, and they support the award entered pursuant thereto. The judgment below is

Affirmed.